UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 06-052 (RMC) |
| | : | |
| v. | : | |
| | : | |
| RICHARD A. KILLETT, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby submits in the above-referenced matter this memorandum in aid of sentencing of defendant Richard A. Killett. As is discussed below, the government requests a sentence within the applicable federal sentencing guidelines, specifically a sentence of ten months imprisonment, but deferring to the Court as to whether to that should be a split sentence, *e.g.*, five months in prison and five months in community confinement or home detention.

### I. FACTUAL BACKGROUND

On February 27, 2006, the government filed an Information charging defendant with payment of bribes to a public official, in violation of 18 U.S.C. § 201(b)(1)(A). On March 31, 2006, defendant pled guilty to the Information. Sentencing is now set before the Court on August 23, 2006, at 4:30 p.m.

According to the statement of offense filed in this matter and the Presentence Investigation Report ("PSR"), at page 4, ¶ 7-12, both of which were agreed to by the defendant, PSR, at page 5, ¶ 15, defendant, in or about late-November of 2005, met with a person he knew who worked at the Washington, D.C., Department of Motor Vehicles (hereinafter "DMV"). Defendant discussed with this individual (hereinafter "DMV employee") the idea of bringing to the DMV employee individuals

who otherwise would have difficulties obtaining DMV drivers' licenses, or endorsements or upgrades to pre-existing licenses, and who, through, defendant, would pay money to the DMV employee in return for the issuance of drivers' licenses, endorsements or upgrades. Defendant told the DMV employee that he needed a number of drivers' licenses applications.

Thereafter, defendant told a number of individuals that he had a contact at DMV who could get them drivers' licenses, endorsements or upgrades for a payment of money beyond that for the normal fee for a driver's license, endorsement or upgrade.

On or about Friday, December 16, 2005, defendant met with the DMV employee near the main DMV office at 301 C Street, N.W., Washington, D.C. At that time, defendant gave the DMV employee $300 as a partial payment for the production of drivers' licenses, endorsements or upgrades for individuals defendant had solicited.

On about Saturday, December 17, 2005, defendant met with approximately six to eight individuals he had solicited to obtain drivers' licenses, or endorsements or upgrades to previously issued licenses. Per prior arrangement with defendant, these individuals met defendant outside the main DMV office and the individuals, with one exception, an individual who agreed to give the money to defendant on a later occasion, gave defendant $500 each for the purpose of obtaining the respective license, endorsement or upgrade. Defendant planned to give $300 to $350 from each individual to the DMV employee and keep the remaining amount for his role in this scheme.

Defendant and the individuals seeking drivers' licenses, endorsements or upgrades then entered the DMV office and the individuals provided their completed applications to the DMV employee. Defendant provided the DMV employee with $3,000 from the money he had received or had been promised by the individuals seeking drivers' licenses, endorsements or upgrades, and

he kept $700 for himself for his services  The DMV employee then took the individuals' photographs.

The individuals were only prevented that day from obtaining the drivers' licenses, endorsements or upgrades they sought because of the arrival of law enforcement officials. The law enforcement officials took a statement from defendant in which he admitted the above-described bribery scheme. Defendant admitted that he knew some of the individuals for whom he acted as a middleman and that he knew that they could not, or would not, obtain the drivers' licenses, endorsements or upgrades in a lawful manner and they sought his assistance to circumvent the DMV procedures. For example, he was told that one of his "customers" could not obtain a driver's license because she had failed the DMV test four times. Other individuals had indicated that they wanted licenses which indicated that they were authorized to operate motorcycles or commercial trucks.

## II. UNITED STATES SENTENCING GUIDELINES ("USSG")

A. More than one bribe pursuant to USSG § 2C1.1(b)(1)

Although the Presentence Investigation Report ("PSR") acknowledges the difference in opinion of the parties as to whether there was more than one bribe, *see* PSR, at page 3, ¶ 4, it does not include in the calculation of the Sentencing Guidelines a two-level increase for more than one bribe. *See id*. at page 5, ¶ 19. As noted in the PSR, it is the government's position that the two-level increase under USSG § 2C1.1(b)(1) applies, while defendant contends it does not, and the parties defer to the Court for resolution of this issue. *See id.* at page 3, ¶ 4. Section 2C1.1(b)(1) provides that: "If the offense involved more than one bribe or extortion, increase by **2** levels."[1] Application

---

[1] This Section was added in an amendment to the Guidelines, effective November 1, 1989, to expand the consideration of what bribes could be considered for an enhancement, *e.g.*, dismissed,
(continued on next page)

(continued on next page)

Note 2 to the Section provides that "[r]elated payments that, in essence, constitute a single incident of bribery or extortion (*e.g.*, a number of installment payments for a single action) are to be treated as a single bribe or extortion, even if charged in separate counts."

The payments in this case were not separate installment payments, but individual bribes collected together by the defendant, a middleman, from six to eight individuals and handed over to the payee, the DMV employee, by defendant.[2] The conclusion that these payments were separate bribes is supported by the analysis in United States v. Arshad, 239 F.3d 276 (2nd Cir.), *cert. denied*, 532 U.S. 910 (2001), an opinion that affirmed a district court finding of more than one bribe. In that case, the Second Circuit identified three factors that should be used to determine if multiple payments constitute more than a single bribe. "The first factor . . . is whether, as stated in Application Note 6 [now Note 2], the payments were made to influence 'a single action.'" *Id.* at 280 (citing cases from numerous circuits upholding findings of more than one bribe). In this case, although the actions by the DMV employee on behalf of the six to eight individuals occurred all on one day, they were separate actions on behalf of each of these individuals, not a single action.

The second factor considered in Arshad "is derived from the reference in Application Note 6 [now Note 2] to 'installment payments' as distinguishable from multiple bribes. . . . courts have

---

acquitted, or uncharged counts, not to restrict that consideration. USSG, Appendix C, amendment 121.

[2] Law enforcement officials stopped eight individuals that day who had come to get licenses, endorsements or upgrades. Defendant had charged each $500, for a total of $4,000. Including the $300 installment or down payment from the day before that defendant provided the DMV employee, defendant gave the DMV employee $3,300 of the total amount of $4,000, and kept $700 as his "commission" for being the middleman or conduit for these payments. *See* PSR at page 4, paragraphs 9-12. If there had been an indictment in this case, the payment from each of the eight individuals could have supported a separate bribery count.

looked to whether the pattern and amount of payments bear the hallmarks of installment payments, such as a regular schedule of payments over a finite period of time toward a fixed final sum, rather than a series of intermittent and varied bribes." *Id.* at 281-82.  Again, in this case, the payments were not meant as installment payments (absent the $300 given the day before, which was in the nature of an installment or down payment for the next day), but rather separate individual payments from numerous payors, which payments were collected together on the day they were paid as a matter of convenience for the defendant and the DMV employee.

The third factor set forth in Arshad was "whether the method for making each payment remains the same -- whether, for example, the payments involve the same payor and payee in each instance, and whether payments are made in the same form and by the same means."  *Id.* at 282. In this case, the payments went through defendant as a middleman or conduit, who got his "commission," but were from separate payors who were present and seeking licenses, endorsements or upgrades in return for those payments.  Considering these three factors together, the payments in this case constituted more than one bribe and the two-level Guidelines enhancement should apply.

In a subsequent Second Circuit case, United States v. Soumano, 318 F.3d 135 (2nd Cir. 2003), the court, relying on Arshad, also found more than one bribe under this Guidelines Section.  In Soumano, defendant made two separate payments a day apart to a Social Security Administration claims representative for the issuance of Social Security cards for undocumented aliens.  *Id.*, at 136. On one day, defendant gave the claims representative $2,500 for eleven false documents and the next day he gave the claims representative $500 for two more false documents.  *Id.*, at 137.  The court found that there were clearly two bribes based simply on the fact that there were two different payments on two separate days for separate batches of documents.  *Id.*, at 137-38; *see* United States

v. Kahlon, 38 F.3d 467, 470 (9th Cir. 1994) ("[defendant] made payments to promote different applications for work papers on [three dates]. Although the payments were part of a larger conspiracy, they were not installment payments for a single action"). Because the court of appeals in Soumano had the relatively easy answer to the one factor in Arshad – the two payments were clearly made to influence more than a single action – it did not address the second and third factors.[3] When all three factors are considered in this case, however, for the reasons discussed in the prior paragraphs, there was more than one bribe. The individuals seeking the licenses, endorsements and upgrades were actually present at the time of the bribe payments to the DMV employee of their respective monies and defendant was merely a conduit for the individual payments. The opinion in Soumano does not lead to a conclusion other than that, consistent with Arshad, there were more than one bribe in this case.

B. Sentencing Guidelines Calculations

The probation officer believes that the defendant's resulting Total Adjusted Offense Level for the offense, without including a two-level increase for more than one bribe, is 10, his Criminal History Category is I,[4] and his USSG range is 6 to 12 months. PSR, at page 5, ¶ 26, and page 11, ¶ 57. Because the applicable guidelines range is in Zone B, under this calculation, defendant is

---

[3] In the appellate brief filed by the United States on the appeal, the government stated that "the District Court properly suggested that this [the two payments on two separate days] was the *minimum* number of actions which [defendant] intended to influence, [citing a page in the appendix to defendant's brief], since it would have been reasonable to find that [defendant] intended to influence 13 different actions, i.e., the issuance of 13 different Social Security cards." Brief for the United States of America, United States v. Soumano, No. 01-1596, 2002 WL 32302166, at pages 11-12 (2nd Cir. 2002).

[4] Although defendant has juvenile matters, which are discussed in the PSR, and one adult arrest for possession with intent to distribute marijuana, which was ultimately dismissed, his criminal history category is I. PSR, at page 6, paragraphs 27-31.

eligible for imprisonment, home confinement, or something between these two possibilities. *Id.*, at page 11, ¶ 58.

If the Court does impose the two-level increase for more than one bribe, as the government believes is appropriate for the reasons discussed above, then defendant's offense level is 12, which, with a Criminal History Category of I, results in a sentencing range of 10-16 months in Zone C. A sentence in Zone C requires a sentence of imprisonment, up to half of which can be satisfied by community confinement or home detention. USSG § 5C1.1(d).

### III. RECOMMENDATION

Defendant acknowledged paying bribes to a public official in order that the official issue Washington, D.C. driver's licenses, endorsements or upgrades to pre-existing licenses. This conduct, especially in light of safety concerns with allowing drivers on the roads who cannot legitimately obtain such licenses, endorsements or upgrades, as well as related concerns of potential identity theft and other such crimes, is serious conduct that needs to be adequately punished. Such identifications allow individuals to be on the roads and driving equipment they might not be capable of operating. Moreover, such identifications can be used, if obtained in fraudulent names, for numerous wrongful purposes including, among others, fraud against a variety of public and private organizations and institutions. Moreover, payment of bribes to a public official is a corruption of a public service institution which itself is a wrong. Corruption by public officials in the District of Columbia, at whatever level, is a serious and, unfortunately, too often recurring matter. Corruption erodes the public confidence in government officials, employees and institutions. Citizens will accept a system they believe operates fairly, but not one that they do not believe does so. Moreover, although most public servants are honest and hard working, their morale is hurt by those who engage

7

in or encourage corruption and their reputations suffer.

To his credit, however, once defendant was confronted by the investigators in this matter, he quickly admitted his illegal actions. Furthermore, he agreed to plead guilty pre-indictment.

Accordingly, the government is recommending a guidelines sentence of ten months, deferring to the Court as to whether to make that a split sentence with five months to be served in prison, and five months in community confinement or home detention. This sentence is within the sentencing guidelines range regardless of whether the two-level increase is applied, as is discussed above. Such a sentence would adequately serve the dual purposes of punishment and deterrence. *See* 18 U.S.C. § 3553(a)(2)(A) and (B) ("[t]he court, in determining the particular sentence to be imposed shall consider . . . the need for the sentence imposed . . . to provide just punishment for the offense . . . [and] to afford adequate deterrence to criminal conduct").

Moreover, a sentence of 10 months, even if it is a split sentence, would help further "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Over the past year, the undersigned attorney for the government has been involved in cases involving individuals acting as middlemen to funnel bribe payments to clerical employees in the District of Columbia government. These individuals, who were sentenced by judges in this District, have received sentences consistent with

what the government is recommending in this case.[5] This is especially true as to the prior cases involving payments to a DMV employee.[6] To avoid disparity with these other defendants, the government respectfully requests that the defendant before this Court receive a sentence of 10 months, and the government will defer to the Court as to whether that should be a split sentence. As to a fine and restitution, it does not appear that defendant has "the resources to satisfy an immediate fine within the guidelines range" and restitution is not an issue in this matter because the

---

[5] The three most relevant cases are listed below:

| Defendant | Sent. Date | Case No. | Sentence |
|---|---|---|---|
| 1) Craig Hughes | 7/22/05 | 04-445 (CKK) | 10 month split sentence (5 mos. prison, 5 mos. elect. super.) 3 years of supervised release |

(Offense level 12, criminal history category I, but 1-level departure under USSG § 5K1.1)
(Payments to DMV employee for fraudulent drivers' licenses)

| | | | |
|---|---|---|---|
| 2) Gregory Murray | 9/13/05 | 04-451 (CKK) | 10 months in prison 2 years of supervised release |

(Offense level 12, criminal history category I)
(Payment to DMV employee for fraudulent drivers' licenses)

| | | | |
|---|---|---|---|
| 3) David Johnson | 1/17/06 | 05-288 (GK) | 18 months in prison 2 years of supervised release Restitution of $30,000 |

(Offense level 15, criminal history category I)
(Payment to Bureau of Traffic Adjudication employee to fix tickets)

[6] See the cases involving defendant Hughes and Murray in footnote 5. These two defendants were co-defendants and their matter involved bringing one or a few "customers" per day on a number of different days, rather than all of them at once. Other than the order in which the "customers" were brought to DMV - a couple at a time, versus all at once - the matters are relatively similar. The offense levels for Hughes and Murray were 12 because the more than one bribe two-level increase was applied.

9

loss to the District of Columbia government was an intangible one. PSR, at page 10, ¶ 55, and page 12, ¶ 72.

                                                Respectfully Submitted,

                                                KENNETH L. WAINSTEIN
                                                UNITED STATES ATTORNEY
                                                D.C. Bar Number 451058

By:          / s /

                                                DANIEL P. BUTLER
                                                D.C. Bar #417718
                                                Assistant U.S. Attorney
                                                555 4th Street, N.W.
                                                Washington, D.C. 20530
                                                (202) 353-9431
                                                Daniel.Butler@usdoj.gov