IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Cr. No. 06-052 (RMC) |
| v. ) | |
| ) | |
| RICHARD KILLETT ) | |
| ) | |

**DEFENDANT'S MEMORANDUM AND DVD IN AID OF SENTENCING**

Defendant, Richard Killett, through undersigned counsel, hereby respectfully submits this memorandum and accompanying DVD in aid of sentencing pursuant to Federal Rule of Criminal Procedure 32.[1]  Based on all the sentencing factors in this case, including the United States Sentencing Guidelines, Mr. Killett respectfully asks the Court to sentence him to two years of probation.

**BACKGROUND**

On February 27, 2006, the government filed a one-count Information charging Mr. Killett with Payment of Bribes to a Public Official in violation of 18 U.S.C. § 201(b)(1)(A).  On March 31, 2006, Mr. Killett pled guilty, in accordance with a written plea agreement, to the Information. He is scheduled to be sentenced on August 23, 2006.

---

[1] A hard copy of this memorandum and a copy of the DVD will be served on the Court and the government on the same date of the filing of this memorandum on ECF.  So that the record is clear, ECF will also reflect the DVD as an attachment to this memorandum.

**DISCUSSION**

I.   **THE POST-BOOKER SENTENCING FRAMEWORK.**

Under Justice Breyer's majority opinion in Booker, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C. § 3553(a)(4)." United States v. Booker, 543 U.S. 220, 264 (2005) (Breyer, J.). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in Booker held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to Booker, therefore, courts must treat the Guidelines as but one, among several, sentencing factors.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a)–which were explicitly endorsed by the Supreme Court in Booker–sentencing courts should consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available,

the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. With respect to *departures* from the Guideline range, in particular, following Booker courts need not justify sentences outside the Guidelines by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may disagree with the range proposed by the Guidelines in individual cases and exercise their discretion.

**II.     UNDER ALL OF THE RELEVANT SENTENCING FACTORS, MR. KILLETT SHOULD RECEIVE A SENTENCE OF TWO YEARS OF PROBATION.**

A.     Statutory Provisions

Pursuant to the applicable statute, the maximum term of imprisonment for the offense at issue is 15 years.

B.     Advisory Sentencing Guidelines

_(I).     Applicable Guideline Range_

The Probation Office, consulting the 2005 edition of the Guidelines Manual, has concluded that the total offense level in this case is 10 and that Mr. Killett's criminal history category is I, resulting in an advisory Guideline range in Zone B of 6-12 months.

_(II).     The Probation Office has Correctly Determined that the 2-Level Enhancement for Multiple Bribes, Advisory Sentencing Guideline § 2C1.1(b)(1), Does Not Apply_

In its PSR, the probation office has correctly assessed that Mr. Killett is not subject to the 2-level enhancement under § 2C1.1(b)(1) of the advisory sentencing guidelines because this section applies only in situations where there are multiple bribes, and that did not occur here. As such, Mr. Killett's base offense level was correctly calculated at a 10, giving him an advisory sentencing guideline range of 6-12 months.

The underlying conduct for Mr. Killett's guilty plea is as follows: Mr. Killett knew someone who worked at the DMV ("DMV employee"). Mr. Killett and the DMV employee agreed that Mr. Killett would give the DMV employee money and, in exchange, the DMV employee would give drivers licenses, endorsements and upgrades to certain individuals that Mr. Killett would bring to the DMV. Mr. Killett was not a recipient of these services, rather, he acted as a middle-man in this transaction. The individuals gave Mr. Killett money, and Mr. Killett kept a small portion of that money and gave the rest to the DMV employee in two installment payments. On December 16, 2005, Mr. Killett gave the DMV employee $300 as a partial payment, and on December 17, 2005, when Mr. Killett brought the individuals to the DMV, he gave the remaining $3000 to the DMV employee. Mr. Killett kept $700 for himself.

Section 2C1.1 of the advisory sentencing guidelines is applicable only to a select group of individuals convicted of bribery. This section provides for a 2-level increase in a defendant's base offense level "[i]f the offense involved more than one bribe." Application note 2 elaborates that "[r]elated payments that, in essence, constitute a single incident of bribery or extortion (e.g., a number of installment payments for a single action) are to be treated as a single bribe or extortion, even if charged in separate counts."

Though the D.C. Circuit has not ruled on this issue, caselaw in other circuits provides a framework for analyzing whether the 2-level increase applies. In United States v. Arshad, 239 F. 3d 276 (2nd Cir.), cert. denied, 533 U.S. 910 (2001), the second circuit identified three factors to be considered in making this determination: (1) whether "the payments were made to influence a single action," id. at 280, (2) "whether the pattern and amount of payments bear the hallmarks of installment payments, such as a regular schedule of payments over a finite period of time toward a fixed final sum, rather than a series of intermittent and varied bribes," id. at 281; and (3) "whether the method for making each payment remains the same," id. at 282.

*a. The Bribe in This Case Constituted a "Single Action"*

There is no question that the bribe in this case was one single action. In Arshad, the court determined that the defendant's actions did not constitute a single action because, over a period of six months, the defendant asked for different types of favors and paid different amounts of money, and he did so on a continuing and indefinite basis. Similarly, in United States v. Jackson, 876 F.Supp.1208, 1213 (D. Kan. 1994), the court found that a bribe was more than just a single act or single set of acts when a payee received bonuses for doing additional work that was not part of the original bribery agreement. These payments constituted multiple bribes because they

5

were "made to promote different or more work from the bribed official." Id.

What occurred in Arshad and Jackson is simply not what happened here. Mr. Killett set up one, and only one, transaction. He paid a set amount of money, and the services he requested never changed or expanded. There is no evidence that Mr. Killett ever engaged in a transaction like this before, nor is there evidence that he intended to engage in a transaction like this in the future. The plan was for Mr. Killett to bring money and the individuals wanting upgrades to one single place, at one single time, on one single date. Accordingly, they met at the DMV, all at the same time of day, all on December 17, 2005. This bribe had a predetermined purpose that remained the same throughout the transaction.

The government's sole argument that this bribe did not constitute a single action is that there was more than one individual receiving services. This argument misses the mark because it completely ignores the facts of the case as they relate to the charge. The charge to which Mr. Killett pled guilty is bribery of a public official. At issue, therefore, is the bribe of the DMV employee. It is uncontested that the DMV employee was bribed with one lump sum, which was made in two installment payments. No additional services were requested or rendered beyond what was in the original agreement. The parameters of this transaction were defined from the beginning, and they never changed.

The assertion that this transaction was a single action is bolstered by a case cited in the government's memorandum, United States v. Soumano, 318 F.3d 135 (2nd Cir. 2003). The government uses this case to support the proposition that a court found multiple bribes when there were two different payments, on two different days, for two different batches of documents. In doing so, the government has effectively punctuated Mr. Killett's position. The Soumano

court makes clear that the second batch of documents was not contemplated in the original bribe, thus the second batch of documents constituted a second bribe. In contrast, as the facts of this case demonstrate, Mr. Killett only engaged in one transaction. He never asked for additional services, and he never added on to his original request. The transaction in this case was a single action.[2]

     *b. The Bribe in This Case was a Finite Sum Made in Two Installment Payments*

As stated in both the PSR and the Statement of the Offense, there were two payments made in this case: $300 on December 16, 2005, and $3000 on December 17, 2005. It was made clear in both the Statement of the Offense and the PSR that this $300 was "a partial payment for the production of drivers' licenses, endorsements or upgrades." Statement of Offense at 2; PSR at 4, ¶ 9. The remainder of the money was brought to the DMV, along with the individuals who paid the money, all at the same time. Thus, both the payments, $300 and $3000, were part of the same single transaction. These two payments are precisely what the advisory sentencing guidelines identify as "installment payments," and the advisory guidelines explicitly state that "they are to be treated as a single bribe."

The government's argument that there were multiple individuals involved once again loses sight of the charge and the facts. At issue here is the bribe Mr. Killett paid to the DMV employee. That he received money from a number of different individuals does not change the fact that this was one single bribe to one single person for one single set of actions. By the

---

[2] The Court need look no further than the Statement of the Offense itself, a document drafted by the government, to conclude that this was a single set of acts. See, e.g., Statement of Offense at 2, ¶ 2, line 13 (referring to the bribe in the singular as "this scheme"); Id. at 3, ¶ 1, line 1 (referring to the incident as the "above-described bribery scheme").

government's own concession, the money was paid in two installment payments with no promise of future or ongoing payments or services. This case exemplifies what the advisory sentencing guidelines refer to as a case where payments are meant to be treated as a single bribe.

*c. The Method of Payment in This Case Was Always The Same*

As the facts of the case demonstrate, the method of payment was consistent throughout the entire time the bribe took place. The Arshad court articulates that consideration should be given to whether "the payments involve the same payor and payee in each instance, and whether payments are made in the same form and by the same means." Arshad, 239 F. 3d at 282. It is uncontested that both installment payments went from Mr. Killett to the same DMV employee. Statement of Offense at 2; PSR at 4, ¶¶ 9, 11. Both payments were made in cash, and both times the cash was exchanged in person. The methods of payment were identical.

For the reasons set forth above, it is clear that Mr. Killett did not engage in multiple bribes, and the advisory sentencing guidelines explicitly intended for actions such as his to be treated as one single bribe. As such, the Court should follow the recommendation of the probation office and decline to add a 2-level enhancement for multiple bribes under § 2C1.1.

C.    Section 3553 Factors

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a), sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

*I. Nature of the Offense*

While Mr. Killett in no way wishes to diminish the seriousness of his offense, he notes that the crime to which he pled guilty was neither a crime of violence nor a drug-related offense. Mr. Killett never intended to harm anyone. He was struggling financially, trying to make ends meet, and he foolishly saw this as a way to make some extra money. Bribery is inexcusable. However, given that nobody was physically harmed, and given the very small amount of money involved, on a relative scale, the nature of the offense in this case is mild.

*II. Characteristics of the Defendant*

Mr. Killett is a man who works very hard to take care of himself and those that he loves. He has two children, both of whom live with their mother: John, who is 13, and Ashley, who is 5. Because he grew up without a father, Mr. Killett considers it a top priority to be a part of John and Ashley's lives. As such, he sees them every week and has a strong relationship with both of them. Because he was raised by a single mother, Mr. Killett understands how difficult it is, financially and emotionally, to raise children alone. To help ease the burden on John and

Ashley's mother, Mr. Killett diligently pays child support and plays an active role in his children's lives. In addition to John and Ashley, Mr. Killett has assumed responsibility for his fiancé's 10-year old son, Ravon. Ravon and his mother, Arlette, live with and are supported by Mr. Killett. Though he must pinch pennies every month to care for his fiancé and children, Mr. Killett is happy to do so because he wants the best for them.

   The amount of time and energy Mr. Killett spends with his family is matched by the effort he puts into his work. Mr. Killett is licensed as a tower safety operator, which allows him to do "tower mapping." What this means is that he climbs telecommunication towers to document all the existing dimensions and equipment on the towers, such as the tower height and the types and sizes of the antennas, to determine if the tower is structurally sound enough to add more equipment. Mr. Killett is also a trained Computer Aided Design (CAD) technician, which allows him to take the data collected from tower mapping and create diagrams and designs for additions to the towers on the computer. Some examples of his work are included on the DVD that accompanies this memorandum. Most recently, Entrex, the company for which Mr. Killett works full-time, has acquired a contract with T-Mobile to create designs for the United States Supreme Court building. In the evenings and on weekends, Mr. Killett does subcontracting work for his own tower mapping and CAD business, which is called ARK Communication. He is working extremely hard to establish himself in this competitive field.

   Simply put, most of Mr. Killett's troubles stem from his unstable financial situation. He has three children and a fiancé to support, and no matter how hard he works, his business has not yet taken off the way he hopes it will. However, as the PSR demonstrates, Mr. Killett is a smart, motivated, ambitious young man. He takes his responsibilities very seriously, including his

responsibility to this Court. He is a loving father, son, and husband-to-be, and he truly has a promising future in front of him.

### III. Appropriate Sentence

Sentencing Mr. Killett to a period of two years of probation would be completely consistent with all purposes of sentencing. Because the probation office has determined that Mr. Killett is in Zone B of the sentencing guidelines, with an advisory guideline range of 6-12 months, Mr. Killett is eligible for probation. Specifically, the advisory guidelines suggest that he should receive between one and five years of probation with six months of that served by home detention. However, based on the particular circumstances of his case, Mr. Killett submits that a sentence of two years probation would be more appropriate to satisfy the purposes of sentencing.

In addition to the factors already outlined in this memorandum, it is clear that Mr. Killett is at a point in his life where every day counts. Every day that he is working, building his business, paying the bills, and caring for his family is important. Were Mr. Killett to stop working, even for six months, this would disrupt not only his life, but the lives of John, Ashley, Ravon, Arlette, and John and Ashley's mother, all of whom depend on him each month for support. It is not in anyone's interest--not the Court, not the government, not the community--for Mr. Killett to stop paying his child support. It is not in anyone's interest for Mr. Killett's family to have to move out of their house because they cannot pay the rent. It is not in anyone's interest for Mr. Killett to stop paying his bills, to lose potential clients, to throw away the hard work that he has done to build up his delicate business that, hopefully, will soon bring financial relief to Mr. Killett's family and also bring a talented young man into the business community.

This is not to say the Mr. Killett should not be punished. He agrees that he should. But given that Mr. Killett is very unlikely to re-offend and that he has been a model defendant since the process began, this is a situation where everyone would be better served if Mr. Killett received a term of probation. This would allow the Court could keep tabs on Mr. Killett, but it would also serve the greater good by not imposing the cost of imprisonment or home detention on the community, not to mention the collateral costs that would arise if the four people Mr. Killett supports are without resources. Based on all the factors the Court must consider, two years of probation is a sentence that is sufficient but not greater than necessary.

## **CONCLUSION**

For the reasons set forth above, as well as for any others the Court may deem fair and reasonable, Mr. Killett asks the Court to sentence him to a period of probation of two years. Such a sentence would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553.

Respectfully submitted,

A.J. Kramer
Federal Public Defender

"/s/"
Rita Bosworth
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500 ext.105